IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| REUBEN WEBB, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 6:17-CV-1343-JO ) |
| DR. REED PAULSON; and JOHN DOES 1-10, | ) OPINION AND ORDER ) |
| Defendants. | ) ) ) |

JONES, District Judge:

Plaintiff Reuben Webb (Webb), acting *pro se*, brought this prisoner civil rights action pursuant to 42 U.S.C. § 1983. ECF No.1. His claim arises from the medical care he received while incarcerated at the Oregon State Penitentiary (OSP) in Salem, Oregon. He alleges that Dr. Paulson[1] (Paulson) violated Webb's Eighth Amendment right when Paulson acted with deliberate indifference to Webb's medical needs. Webb seeks unspecified monetary damages in compensation.

Paulson filed a motion for summary judgment. ECF No. 35. For the following reasons, Paulson's motion is GRANTED.

---

[1] Although Webb named ten John Does in his complaint, only Paulson was served and Webb's complaint alleges wrongdoing only by Paulson.

1   Opinion and Order

## **LEGAL STANDARD**

Summary judgment is proper where pleadings, discovery, and affidavits show there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The district court should grant summary judgment if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). If the moving party shows that there are no genuine issues of material fact, the burden shifts to the non-moving party to "go beyond the pleadings and by [his] own affidavits or by the 'depositions, answers to interrogatories and admissions on file,' designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986) (quoting Fed. R. Civ. P. 56). A scintilla of evidence, or evidence that is merely colorable or not significantly probative, does not present a genuine issue of material fact. *United Steelworkers of America v. Phelps Dodge*, 865 F.2d 1539, 1542 (9th Cir. 1989). Reasonable doubts as to the existence of a material factual issue are resolved against the moving party and inferences drawn from facts are viewed in the light most favorable to the non-moving party. *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630-31 (9th Cir. 1987). A *pro se* plaintiff is to be held to a less stringent standard than a plaintiff acting with assistance of counsel. *Erickson v. Pardus*, 551 U.S. 89, 95 (2007).

The treatment a prisoner receives in prison is subject to scrutiny under the Eighth Amendment. *Helling v. McKinney*, 509 U.S. 25, 31 (1993). The Eighth Amendment imposes duties on prison officials to provide prisoners with basic necessities, including medical care. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Under 42 U.S.C. § 1983, to maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show "deliberate indifference to serious medical needs." *Estelle v. Gamble,* 429 U.S. 97,____ (1976).

## BACKGROUND[2]

After Webb suffered a stroke in June 2015, he was seen by Dr. Hoak, a neurologist at Oregon Health and Sciences University. ECF No. 27 at 24. Webb had been taking a stroke prevention medication, Aggrenox, but suffered from headaches. To relieve Webb's headaches, Dr. Hoak recommended changing to a different medication, Plavix. ECF No. 36 at 3, ¶ 10. Dr. Hoak also recommended a medication bridge during which Webb would take both Aggrenox and Plavix for four days and then discontinue Aggrenox. ECF No. 27 at 26. Webb's OSP medication records show that Webb was to begin taking Plavix on August 21, 2015 and to discontinue taking Aggrenox on August 26, 2015. ECF No. 27 at 34. Webb had a conversation about the medication bridge with Nurse Julie at OSP who called Paulson. ECF No. 44 at 4, ¶ 6; and 6, ¶ 8. According to Webb, Paulson told the nurse not to worry about the bridge and to just switch the medications. ECF No. 1 at 2.

On August 29, 2015, Webb was admitted to Salem Hospital complaining of new neurologic symptoms: the sudden onset of imbalance, visual blurring, weakness in his right upper extremities, and clumsiness. ECF No. 27 at 41. Webb underwent testing, including a magnetic resonance imaging (MRI) and a magnetic resonance angiography (MRA). Although Webb claims he suffered another stroke, Dr. Delaney, the neurologist at the Salem Hospital concluded that Webb's "Neuroimaging is reassuring that there is likely not evidence of new cerebral _____[3] and the finding of his vertebral artery occlusion is an older finding." ECF No. 36. Attch. 5, at 5.

---

[2] The following facts are based on the record viewed in the light most favorable to Webb, the non-moving party.

[3] The copy of the medical record provided by Paulson does not show the entire page. It appears to have cut off one word. The missing word does not change the substance of Dr. Delaney's opinion.

3  Opinion and Order

Webb filed this § 1983 action alleging that ignoring the medication bridge directive caused a stroke. Paulson moved for summary judgment arguing that he is not liable because he did not participate in any of the actions leading to the harm alleged. In his sworn declaration, Paulson claims he did not write the order changing Webb's medication from Aggrenox to Plavix. As to the alleged phone call between the nurse and him, Paulson declares he does "not have any independent recollection of this alleged conversation." ECF No. 36 at 3. Furthermore, Paulson contends that because Webb had "a personalized in-cell bubble pack" of Aggrenox, Webb was responsible for his own management of these medications. Finally, Paulson asserts that Webb cannot demonstrate any harm because the Salem Hospital was able to rule out a second cerebrovascular accident based on radiological tests. Alternatively, Paulson argues he is entitled to summary judgment based on qualified immunity.

## DISCUSSION

I.  Deliberate Indifference

The Ninth Circuit's test for deliberate indifference consists of two parts. *McGuckin v. Smith,* 974 F.2d 1050 (9th Cir.1991), *overruled on other grounds by WMX Techs., Inc. v. Mille,* 104 F.3d 1133 (9th Cir.1997) (en banc). First, the plaintiff must show a "serious medical need" by demonstrating that "failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *Id.* at 1059 (quoting *Estelle,* 429 U.S. at 104). Examples of a "serious" need for medical attention include the presence of a medical condition that significantly affects an individual's daily activities or the existence of chronic and substantial pain. *McGuckin*, 974 F.2d at 1059-60 (citing *Wood v. Housewright*, 900 F.2d 1332, 1337-41 (9th Cir. 1990)). Second, the plaintiff must demonstrate the defendant's response to the need was deliberately indifferent. *Id.* at 1060. The second prong is satisfied by showing (a) a

purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference. *Id.* Indifference "may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." *Id.* at 1059 (quoting *Hutchinson v. United States,* 838 F.2d 390, 392 (9th Cir.1988)). An "inadvertent [or negligent] failure to provide adequate medical care" alone does not state a claim under § 1983. *Id.* (citing *Estelle,* 429 U.S. at 105). A prisoner need not show his harm was substantial; however, such would provide additional support for the inmate's claim that the defendant was deliberately indifferent to his needs. *Id.* at 1060. If the harm is an "isolated exception" to the defendant's "overall treatment of the prisoner [it] ordinarily militates against a finding of deliberate indifference." *Id.* (citations omitted).

Paulson was aware that Webb suffered a stroke in June 2015. ECF No. 36 at 2, ¶ 6. He also knew that Webb was being treated with anti-stroke medication. *Id*. at ¶ 6. Webb received a referral to a specialist who recommended a medication bridge. A reasonable doctor would know that the appropriate administration of medications was important to keeping Webb from suffering another stroke. Webb has established that he had a serious need for medical attention.

As to the second prong of the analysis, Webb states in his declaration that he was told by Dr. Hoak to take both the Aggrenox and Plavix for four days and that he discussed this protocol with Nurse Julie. ECF No. 44, at 4. Webb declares that Nurse Julie McCrae called Paulson, who said not to worry about the bridge and to switch the medications. *Id*. In his declaration, Paulson states that he has no independent recollection of the phone call. ECF # 36 at 3, ¶ 13. Paulson's response does not refute Webb's allegation. At best, it challenges Webb's credibility, which is a question of fact. I am obligated at this stage to construe the allegations in the light most favorable to Webb. Whether the phone call occurred and whether Paulson told Nurse McCrae

5  Opinion and Order

not to continue the Aggrenox are genuine issues of material fact important to the determination of the first element of the second prong – whether Paulson denied, delayed or intentionally interfered with Webb's medical treatment.

However, to make out a claim for deliberate indifference, there must also be genuine issues of material fact showing Webb suffered harm. While Webb claims that he had a second stroke, the evidence in Webb's medical records from the Salem Hospital where he was treated proves otherwise. The findings from the MRI administered to Webb upon admission to the Salem Hospital state that "[n]o acute ischemia is demonstrated. There is no midline shift, no mass effect, no abnormal extra-axial fluid collection…. The defect seen on today's study appears chronic based on the prior exam. When compared to the prior exam(s). There is no worrisome interval change." ECF No. 36, Attach. 5 at 4. Dr. Prakash, one of Webb's treating physicians at the Salem Hospital, wrote a progress notes stating that Webb's MRI was negative for stroke. ECF No. 36, Attach. 5 at 13. And most notable, Dr. Delaney, a Salem Hospital neurologist, found Webb's neuroimaging to be "reassuring that there is likely not evidence of new cerebral [____]" and that the finding of vertebral artery occlusion appeared to be an older finding. ECF No. 36, Attach. 5 at 5. While there is a genuine issue of material fact as to whether Paulson directed the nurse not to provide Webb with a medication bridge, there is no genuine issue of material fact as to whether Webb suffered a second stroke. Without any facts supporting Webb's claim of harm, his action against Paulson is not sustainable. Thus, I find Paulson is entitled to summary judgment on the basis that he did not provide deliberately indifferent medical care to Webb.

6  Opinion and Order

II.     Qualified Immunity

Because I find Paulson did not provide deliberately indifferent medical care, I do not consider the issue of qualified immunity.

## **CONCLUSION**

I GRANT Paulson's motion for Summary Judgment. ECF No. 35. All other pending motions are DENIED as MOOT.

IT IS SO ORDERED.

DATED April 16, 2020

                                                         /s/ Robert E. Jones
                                                         Robert E. Jones
                                                         United States District Judge